Next matter on our calendar is United States v. Ashram Siprasad. Morning. Morning. You may proceed. Please the court. My name is Ryan Lattimore. I represent Ashram Siprasad. He's a 52-year-old male from Trinidad and Tobago. He entered the U.S. in 1995 and became a permanent resident in 2001. In 2002 he was convicted of conspiracy to commit credit card fraud and in February of 2015 he was placed into immigration removal proceedings based upon that conviction. He has no other criminal convictions of any kind. He's since been ordered removed by the Immigration Court and that decision was upheld by the Board of Immigration Appeals. Shortly after he was... Why isn't it that the court's questioning of Mr. Siprasad during the plea allocution where among other things Judge Adman says, do you understand the legal consequences? You will likely be deported. Why doesn't this take care of the entire problem that you raise in your appeal? Okay, very good question. So I think that that is the question. Okay, so the Supreme Court in Padilla, Frye, those decisions placed a very specific emphasis on the information that defense counsel gives an individual before they plea guilty. And especially in this case, you can see from the plea... I want you to focus on the prejudice part. Especially in this case, Mr. Siprasad was given very specific advice as to the immigration consequences. And both of the advice, both types of advice he was given, that if there was a sentence given less than one year, it wouldn't have any adverse immigration effects. And also that he would be able to have some sort of deportation defense in the future based upon waivers and would be able to either get new permanent resident status or complete his permanent residence. That's not what the It was just, look, you're gonna be convicted of a felony. I can't tell you what's gonna happen, but there is a likelihood. And it's asked not once, but twice. That's a very good point that you bring up, Your Honor. The plea transcript has a district court judge telling Mr. Siprasad that because he's convicted of a felony, he is going to face immigration consequences. That's just legally incorrect. The crime being a felony has absolutely nothing to do with it. It's the loss amount and it's the type of crime. Fraud. All right. So the judge Even better, the court set the floor so low, the court set the floor so low in its advice that, hey, word felony, that's what you're gonna be and you're gonna face immigration consequences. Period. End of story. Why doesn't that just solve the problem? Instead of, well, you know, if there's a certain loss amount, you're this. So he's doing a mental calculus on loss amount. That's not even factored into us. You're convicted of a felony. You're gonna face immigration consequences and not once but twice. Do you understand? Do you understand what I'm saying to you? Yes. Yes. Yeah. And under oath, I presume, because most defense rule 11 admonishments are are there for just general bare bones, bottom level information to an important part for Mr Seepersod was the information he got before he appeared at that plea hearing. Plea hearings are going to the admonishments, a rush, bomb, bomb, bomb, felony. I know that I know that the judge took a little extra time. He says, I mean, the defendant should not plead guilty if he doesn't understand that's a likely consequence. So you are you saying that no matter what the judge said, she had gone on and on, uh, in connection with the likely immigration consequences of a guilty plea that would have been vitiated by whatever miscommunication occurred between Mr Seepersod and his counsel. It's another good example. Likely face immigration consequences. Likely face deportation is legally incorrect. Just like telling someone because you're being convicted of a felony, you're going to face. That's that's incorrect. His attorney gave more, more pointed, more specific advice than that prior to the plea hearing that meets Mr Seepersod relied upon. I'm not saying that you, I think it'd be unreasonable to say that you can't look at what the judge said and weigh that and consider it under the totality of the circumstances as far as prejudice goes. I think that's reasonable, but I don't think that it per se destroys prejudice forever. Are you saying, I'm sorry, go ahead. No, please go ahead. Are you also suggesting then that if counsel had specifically said, look, you've got a, you're, there's a felony, if you plead to a felony without getting into the allegations, if you generally plead to a felony, you are likely to be deported. That, that would suffice at some level. I mean, it might be incorrect in your view because it's too really gross a generalization. But were you saying that that wouldn't suffice to at least put the client on notice that there are immigration consequences that attach to the guilty plea? I'll meet you halfway. It, it provides you to meet me the whole way. I won't meet you the whole way. Okay. It, it provides, like I said, I think it is a consideration and something to look at under the totality of the circumstances as to whether this individual suffered prejudice as a whole. I, I think it's fair to look at that. But I don't think incorrect legal advice given by the judge destroys his ability to show prejudice. I mean, he, they were obviously aware that there was going to be an immigration issue and they took substantial steps to try and mitigate that issue. So you got, you, you have the former counsel saying, less than a year sentence, we're good. If that doesn't work out, because of the timing of your permanent residence, you're in a better position than you would have been, and it's unclear what exactly he means by that, but you're in a more, a better position. And if that doesn't work, you'll be able to file waivers, a specific affirmative immigration defense, says it right in the plea transcript, and you'll be able to defend your deportation. I mean, these are very, this is a very specific, thought out, planned out process that they are trying to achieve through this plea agreement. Okay? And when he's to less than a year, and then it's like, sorry, was wrong, that doesn't work. My bad. That, that advice prejudiced him. He entered into a plea agreement that he thought was going to bring him a benefit, and that benefit was destroyed. Sorry for talking. Let's jump around this for a second. Where's the evidence that he would not have taken the plea and, or ended up in exactly the same position if he had known exactly what was going to happen? The plea agreement worked out very well for him. I'm sorry, I didn't hear you. The plea agreement worked out very well for him, but it couldn't save him from, as the judge informed him, from the deportation consequences. I'm not sure, what does Your Honor mean specifically by the plea agreement worked out well for him? Well, he didn't do any actual time, did he, in prison? No, no. But the time at issue was, I mean, relatively short. We're not talking like 20, 30 years. The guideline reigns, it's unclear because the sentencing transcripts aren't available, but it was somewhere like 12 months, 18 months, 15. Where's the evidence that he would have done something different had he gotten what you think he should have gotten, either from the judge or his counsel or both? Yes. Great question. So in my opinion, you have to look at the, once again, the totality of the circumstances, okay? The fact that he made this such a big issue that they talked about it, a lot of these plea hearing transcripts come back, it's just the judge saying something, defense counsel doesn't say anything. That is the typical case. They took pages of the transcript here discussing the immigration consequences and whether he had discussed them with Mr. Seepersod or not. And like I said, they, the transcript shows a clear plan of attack that was formulated in order to combat this immigration issue using this guilty plea agreement. That was wrong. All of it. But then he would have gone to trial, been convicted, been in exactly the same position, and to me, you have zero argument. He didn't have the knowledge. What would he have done differently had he had the knowledge? And where is the evidence of that in the record here? In his affidavit, he says that he would not have entered into a plea agreement that knew, that he knew made him an aggravated felon, and that, and he also says in his affidavit, he would have sought an alternate plea agreement. And the way the wording is, I wasn't part of the case when that affidavit was written, but the way the wording is, it seems to insinuate that he also would have considered going to trial. And like I said, we're not talking about he goes to, if he goes to trial, the mandatory minimum's a year. So I don't think, like I said, if you're looking at all the facts, the totality, I don't think it's unreasonable to think that someone who has a mother here, five sisters here, just got his green card, made obviously this big deal out of this with his counsel, would have tried to get another. They thought they got the right plea agreement. They did it. They were wrong. They didn't. They didn't get any part of it right. It was 100 percent wrong. So he thought he got the right plea agreement. So when did he become a lawful permanent resident? 2001. Mr. Latimer, you reserve two minutes for rebuttal. We'll hear from the government. Your Honors, and may it please the Court, my name is Matthew Hagans, and I represent the United States in this case. The question here is simple. Has the appellant demonstrated that the district court abused its discretion by denying the appellant's petition for the extraordinary remedy of quorum nobis relief? Because the district court's decision was correct, this Court should affirm that decision for at least two reasons. First, and this is assuming that the alleged pre-plea advice of counsel as to immigration consequences was given, the appellant cannot show prejudice under Strickland because he has not demonstrated any doubt as to his guilt. Second, after the alleged misadvice, the district court unambiguously warned the appellant of his deportability. And the fact that the appellant proceeded with his guilty plea after receiving and acknowledging those warnings under oath is fatal to his quorum nobis claim. Although he believes what his lawyer told him. So he said, oh, the judge is doing whatever she has to do, but my lawyer explained this to me in ways that I understand, and I'm proceeding with this. There's nothing in the record, Your Honor, to demonstrate any discussions that occurred with, between the appellant and counsel after the entry of the plea. And I, and I... This was before the plea. Yes, Your Honor. And I, I, I submit that a, a reasonable person entering into a guilty plea who was advised by a district court that he is subject to a high likelihood that he will be deported by very strict INS authorities, having been given contrary advice. His lawyer told him otherwise. His lawyer said, look, we're good. If the sentence is under a year, we're going to be good. You're going to have no consequences. And he thought the judge was just mouthing things she has to mouth at, at a sentencing, at a plea colloquy. Yes, Your Honor. And, and again, assuming that, that, that... The question I'm asking is, did the judge's statement in open court overwhelm the advice that he believed he got in private from his attorney and he believed? And how can we judge that? I think at, at minimum, Your Honor, it put him on notice that there was a disagreement between the district judge and his counsel as to his deportability. And it also put him on notice of that disagreement in 2002. That's 13 years before he files his quorum novus petition. It put him on notice of that potential disagreement at a time when he could have still withdrawn his guilty plea, citing ineffective assistance of counsel under Strickland. Instead, he listened to the district court's colloquy. He listened to his counsel thank the district court for advising him of the significant consequence of deportation. He listened to the district court ask him under oath twice if he understood the potential consequences of his plea. And he proceeded to enter his plea. And it's only 13 years later, once the very likely consequence of deportation has actually come to fruition, that he now files this quorum novus petition. If, if we were in a 2255 situation or a direct appeal situation, I think this argument might be a very different argument, but we're not in those circumstances. Returning to the prejudice point, Your Honors, the record demonstrates that the appellant was desperate to avoid a trial in this case. He was indicted in December of 2001. The trial was set for about four months later in March. At the plea, which was only two weeks before the set trial date, a conference that was set, it appears from the record, at the appellant's request, the counsel stated to his, to the court that his client was going to accept the plea and that the appellant was exploring the possibility of a cooperation agreement with the government. The court said, basically, that's fine. If you're going to do that, it needs to happen before the trial date. A not unreasonable position, given that there were several other co-defendants also scheduled for trial. The counsel asked, could we please extend the schedule to allow us to explore those negotiations? And the court said, nope, you can plead or we can go to trial in March. And the appellant entered his plea later that same day. Now, the fact that he was considering and exploring a cooperation agreement makes it even less likely that he would have pursued a case to trial. And pursuing a cooperation agreement, in all likelihood, would have required him to plead guilty to an offense, most likely one of the offenses charged in the indictment, any of which would have qualified him for deportability. Had he gone to trial, I think it is fair for the court to conclude from this record that he would have lost. He confessed to the core facts of the government's case, not once, not twice, but three separate times. He first confessed in June 2001 to a Radio Shack corporate investigator. He acknowledged that confession again. I'm sorry. You may have said this already, but what was his sentencing exposure under the guidelines? As calculated at the plea agreement, Your Honor, it was 12 to 18 months. That's the plea agreement. But after trial, if he had been convicted, what was it? That was an error, wasn't it? I apologize. As calculated during the plea conference, it was 12 to 18 months. But in reality, it was 15 to 21, wasn't it? I believe in the draft plea agreement that was submitted, it was 15 to 21. I don't think there's any dispute in the record that the range calculated at the plea conference, 12 to 18 months, was correct. He had reason to believe he could be under a year. Well, it's important to bear in mind that this occurred in 2002, in an era when the guidelines were mandatory. This is before the Booker decision. And as the Court stated at the plea conference, it's very unlikely that I'll be able to depart from the sentencing guidelines in your case. It would require some kind of extraordinary case for me to be outside of the 12 to 18 months range. If this sentencing were occurring today, I agree the appellant might reasonably expect I might get under 12 months. But at the time, in 2002, it would have been unreasonable, as the district court found in denying the Quorum Novus petition, it would have been unreasonable for him to conclude, I'm going to get less than a year in prison because the floor of his sentence under the guidelines was— But in any event, that advice was wrong. That if it's under a year, you won't be deported. That advice was— The lawyer's advice. —was wrong. The lawyer's advice was wrong. The lawyer's advice was wrong. Correct, Your Honor. Assuming that— And he relied on a 12, a little below, a little above. But he relied on that advice. And so what the judge told him didn't change his view that he would not be deported, even though he was pleading guilty to what turns out to be an aggravated felony. I agree that it did not change the appellant's view as to his evaluation of his deportability. That does not change the fact that the district court did everything in its power to warn him, if you proceed with this plea, in all likelihood, you will be deported. That is what the INS will do. And I submit at best interpretation of that record for the appellant, at minimum, it puts him on notice that there is something wrong with the evaluation of his deportability between the district judge handling his case and his counsel. That puts him on notice of the core gravamen of his potential Strickland claim. And that's in 2002. That's 13 years before he files the petition to vacate his conviction. Do you agree, by the way, that it's appropriate, the appropriate mechanism is a writ of quorum notice in this context where he's in ICE detention? I dispute that the writ, of course, dispute that the writ should be granted. No, no, no. That's not the question. But this is the appropriate mechanism. It's available to someone in his current position. In terms of this Court's jurisdiction, to hear the petition and the jurisdiction of the district court below, yes, we concede, for the purposes of this case, that he's suffering a continued legal injury, as it were, under the consequences of his 2002 conviction, and that quorum notice is the remedy of last resort. Again, just to wrap up on the prejudice point, he acknowledged that confession after making it again in August of 2001. He acknowledged it a third time in November 2001. That's the government's appendix at one. And this is not the type of case where there's a disputed confession, a confusing confession, a post-arrest confession that might get thrown out on some kind of Fourth Amendment or Fifth Amendment grounds. Three separate times he acknowledged the core facts of the government's case. And so he cannot prove prejudice under Strickland in the sense that he would have successfully navigated the rigors of a trial. If he can't prove prejudice under Strickland, he can't prove entitlement to relief under quorum notice. MR. LIDEMANN Based on ineffective assistance of counsel. MR. ZUNIGA Correct, Your Honor. If the panel has no further questions. MRS. SOTOMAYOR Thank you. MR. LIDEMANN Thank you, Your Honors. MR. SOTOMAYOR Thank you. MRS. SOTOMAYOR Mr. Lidemann, you're reserved two minutes for rebuttal. MR. LIDEMANN I wanted to circle back for a second on the issue of whether court admonishments can make it impossible to prove prejudice at a later date. It's something the Supreme Court in Padilla looked at. So see Padilla 559 U.S. at 374, footnote 15. There were numerous states, including Kentucky, which was at issue with the Padilla case, that said, hey, don't need to assign this responsibility to defense attorneys. We got our forms. We got our plea colloquies. And it goes over this possibility. Supreme Court rejected that. They put the onus on the defense attorney, not at the plea hearing, before the plea hearing. And they assigned a pretty big burden to them. They recognized the seriousness of the situation. So I would say that the Supreme Court ignoring that as an option, which they could have taken, answers that question, in my opinion. There was a mention that a lot of time has passed since Mr. C. Persaud pled guilty. My answer to that is he was told if he received a sentence under a year, he'd be good. And he received a sentence under a year. So why would he then file a quorum nobis 13 years ago to challenge that? They thought that they had achieved their goals until 2015. And then he filed a writ of quorum nobis. I don't have the exact dates, but between two and four months. In other words, attorney's advice was vindicated by no one seeking to remove him after he got this plea of no time. No, that's incorrect. ICE sometimes waits. They could have come for him the next day. And so it wasn't vindicated. If anything, it just made it worse, because it was he thought he was good for so long. I think Judge Pooler meant that the long time between when he finished his probation and getting less than a year and when he was picked up. Correct. Vindicated his attorney's advice. Proved essentially to him, or one could argue it proved to him that he. I didn't take it like that. I'm sorry. Yes. All right. Thank you. Thank you both. We'll reserve decision.